IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**FILED**
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 0 7 2020

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

JOETTA POWELL                                                    PLAINTIFF

VS.                                CASE NO. _4:20-CV- 914 - BRW_

ROBERT WILKIE, In                  This case assigned to District Judge _Wilson_
His Official Capacity as the       and to Magistrate Judge _Kearney_
SECRETARY OF THE DEPARTMENT
OF VETERANS AFFAIRS                                             DEFENDANT

## COMPLAINT

### Introduction

This is a civil rights action brought pursuant to 42 U.S.C.S. § 2000e et seq. (Title VII of the Civil Rights Act of 1964, as amended), in order to recover damages against the defendant for the unlawful discriminatory employment practices that the plaintiff, Joetta Powell, has been subjected to, all on account of her race (African-American), as well as the retaliatory treatment that she suffered for having opposed discriminatory treatment. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 to declare the rights and other legal relations between the parties. The plaintiff is also seeking equitable relief and injunctive relief as well.

### I.
### Jurisdiction

1.      Jurisdiction and venue of this Court are invoked pursuant to 28 U.S.C. §§ 1331, 1343, 1391, 42 U.S.C. §§ 2000e *et seq.* (Title VII of the Civil Rights Act of 1964, as amended), and 29 C.F.R. § 1614.110, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.

2.      The unlawful employment practices alleged to have been committed against the plaintiff were committed in the State of Arkansas, and in Pulaski County, Arkansas.

1

II.

Parties

3.      The plaintiff is an African-American female, and is a resident of the United States of America.

4.      The defendant Robert Wilkie is the Secretary of the United States Department of Veterans Affairs, and is being sued in his official capacity.

5.      The defendant Robert Wilkie, as the Secretary of the United States Department of Veterans Affairs, is an employer within the meaning of 42 U.S.C. § 2000e (b), (g), and (h).

III.

Facts

6.      The plaintiff Joetta Powell is a Registered Nurse, and his currently employed by the Department of Veterans Affairs.

7.      Ms. Powell started her career with the Department of Veterans Affairs on or about May 11, 2008.

8.      Ms. Powell possesses a master's degree.

9.      Ms. Powell has previously worked in the position of Clinical Operations Nurse Manager for Surgery & Anesthesia Services, working under the supervision of Dawn Moore, a Caucasian female.

10.     During the time period of January 2017 – July 2019, the plaintiff was working in the capacity as Clinical Operations Nurse Manager for Surgery & Anesthesia Services.  It was during this time, that the plaintiff was subjected to a pattern of disparate treatment and hostile work environment due to her race.

2

11.     At one of the weekly Monday morning Surgery Administration a Caucasian doctor John Gocio made a comment that his father told him that he was stupid for getting into a fight with a police officer during his youth.

12.     Dr. Gocio became loud and agitated during this discussion, stating that it was a wonder that he did not get shot in the back.

13.     The discussion then turned to how unarmed African American males are shot and killed by the police.  There was also a discussion about an incident that happened in Cleveland, Ohio where two (2) unarmed black people were shot 137 times – Timothy Russell and Malissa Williams by Cleveland police officers.

14.     Dawn Moore stated in an emphatic tone that "they got what they deserved."

15.     The plaintiff was the only African American in the meeting, and the discussion made her feel very uncomfortable.

16.     The plaintiff witnessed Dawn Moore mistreating two (2) African American orthopedic technicians on several occasions.  Ms. Moore would talk to the black employees in a condescending tone, and demean them on many occasions.

17.     Ms. Powell also witnessed the mistreatment of an African American employee who was detailed for disciplinary actions. There were also three Caucasian employees who were detailed due to disciplinary reasons as well.

18.     The Caucasian employees were allowed to work Monday – Friday in a clerical capacity within Surgery/Anesthesia Services offices.

19.     However, the African American employee was forced to work out of his assigned area, and was assigned to perform menial tasks such as cleaning cabinets and restock items.  Dawn

3

Moore also stated that "if we do not have anything else for him to do, he can be detailed to Environmental Services (EMS)," where he would perform janitorial type work.

20.     The plaintiff sent an email to Dawn Moore pointing out the fact that all of the detailed employees were eligible to work in Environmental Services, but why did she only insist that the African American employee be detailed to work in EMS, but not the Caucasian employees.

21.     Shortly after pointing out the discriminatory treatment of these African American employees, the plaintiff was subjected to retaliatory and discriminatory treatment by Ms. Moore.

22.     Dawn Moore begin to add many other duties to my work responsibilities.

23.     In addition to performing my role as the Clinic Operations Nurse Manager for Surgery/Anesthesia Services, in July 2016, I was given the additional duty of assisting the service with the implementation of a new electronic health records system – Anesthesia Record Keeping (ARK).

24.     While the ARK system was being implemented, the plaintiff requested assistance with her full-time role of serving as the Clinic Operations Nurse Manager for Surgery/Anesthesia Services.

25.     The implementation of ARK lasted from July 2016 to May 2017 when it went live. During this time period, the plaintiff was provided little assistance with her normal duties.

26.     As the implementation of ARK progressed, it became a full-time role for the plaintiff to perform, while performing her other full-time role as the Clinic Operations Nurse Manager for Surgery/Anesthesia Services.

27.     Sometime around April 2017, the plaintiff met with Avie Singleton, the Business Manager, and Dawn Moore, Associate Nurse Executive for Surgery/Anesthesia Services to discuss

4

who they were going to hire to serve in the capacity as the ARK coordinator or whether this function was to be transferred to Nursing Informatics.

28.     The plaintiff advised Dawn Moore that the ARK program needed to transitioned to a full-time person, because the plaintiff already had a full plate of responsibilities.  The plaintiff decided to relieve herself of the ARK program after it went live in May 2017.

29.     However, the plaintiff was told by Dawn Moore that she could not be relieved of the added responsibility of ARK, requiring the plaintiff to perform this full-time role, while also serving in her full-time role of Clinic Operations Nurse Manager for Surgery/Anesthesia Services.

30.     Also during this time period, the plaintiff was also serving as the full-time Health Systems Specialist for Ophthalmology Services due to the retirement of the person who served in that role.

31.     In addition to serving as the Clinic Operations Nurse Manager for Surgery/Anesthesia Services, the plaintiff was also forced to perform the full-time role as the ARK coordinator until February 2018, and also served as the full-time Health Systems Specialist (HSS).

32.     The person who previously served as the Health Systems Specialist was not required to make site visits to the Ophthalmology and Optometry Clinics, which are located in Conway, North Little Rock, and Little Rock.

33.     I was required to oversee the day-to-day operations of the eye clinics because the previous person who supervised the clinics was not visible.

34.     The plaintiff now had the responsibilities of working in a supervisory capacity for the eye clinics, as well as working in the administrative capacity, while managing the clinics for the entire service, and performing duties of an Informatics Nurse.

35.     A Caucasian employee by the name of Vicki Phillips, who worked in the capacity as Medical Support Assistant (MSA) was told that a position would be opened that would allow her to remain in our service to provide me with assistance.  The full-time MSA position had been transferred from Surgery/Anesthesia to the Chief of Staff.

36.     While filling in for Ms. Moore, who was out frequently due to vacation, and military leave, the plaintiff was tasked with the responsibility of assisting with the writing of requests to fill positions for other full time roles such as Ophthalmologist and Advanced Practice Nurse, but was never asked to pull data to support the request for the MSA within surgery services.

37.     The plaintiff was asked to take on many of her supervisor's duties and responsibilities.

38.     Due to the added pressure and stress that the plaintiff was experiencing due to the added duties, she began to experience physical ailments that adversely affected her health.

39.     Due to the stress and physical ailments that the plaintiff experienced, she was forced to leave her position as the Clinic Operations Nurse Manager for Surgery/Anesthesia Services after suffering a miscarriage.

40.     Approximately one year after vacating her position as the Clinic Operations Nurse Manager for Surgery/Anesthesia Services, the plaintiff discovered that the service hired a supervisor for the Health Systems Specialist, who was hired three (3) weeks prior to the plaintiff vacated her position.  The person to fill the Health Systems Specialist position as hired after the service became aware that the plaintiff has been selected to fill a new position out of surgery services.

41.     The plaintiff had requested over a year that the service hire a Health Systems Specialist as support for the plaintiff, but her requests were denied.

6

42.     Furthermore, the plaintiff requested that the service hire a supervisor for Ophthalmology, which is one of the roles that the plaintiff served in, but her requests were denied.

43.     While the plaintiff served in the role of Clinic Operations Nurse Manager for Surgery/Anesthesia Services, she repeatedly asked for an assistant, but her requests were denied.

44.     Three weeks before the plaintiff vacated her position as Clinic Operations Nurse Manager for Surgery/Anesthesia Services, the service hired a Health Systems Specialist to assist the person who succeeded the plaintiff as the nurse manager.

45.     The person who succeeded the plaintiff as the Clinic Operations Nurse Manager for Surgery/Anesthesia Services, was a Caucasian female.

46.     The new Clinic Operations Nurse Manager for Surgery/Anesthesia Services, who was a Caucasian, had the support that the plaintiff did not have, such as having the support of a Health Systems Specialist starting shortly after she was hired, and Ophthalmology/Optometry Supervisor hired seven months later, and within one and  a half years after she was hired, an Assistant Nurse Manager was hired as additional support.

47.     Despite only having a bachelor's degree, the present Clinic Operations Nurse Manager for Surgery/Anesthesia Services was hired over an African American female applicant who possessed a Ph.D., and was by far the superior candidate than the Caucasian female who was selected for the position.  This demonstrate the discriminatory environment that the plaintiff was forced to work in while serving as the Clinic Operations Nurse Manager for Surgery/Anesthesia Services.

48.     The environment that the plaintiff worked in was demonstrably hostile due to her race, that in one instance she was required to have an unexpected outpatient procedure, and had an adverse reaction to general anesthesia, which adversely affected her ability to perform her duties.

7

49. This unexpected procedure was done while Dawn Moore was out on military leave.

50. When Ms. Moore returned from her military leave, she harshly admonished the plaintiff for not completing some tasks that had been left for her to do, despite the plaintiff telling Ms. Moore that she [Ms. Powell] had suffered an adverse reaction to the anesthesia, which negatively impacted her ability to perform her duties.

51. The plaintiff was under so much stress and pressure due to the discriminatory treatment that she was enduring, that she suffered a miscarriage sometime in June 2018.

52. After suffering her miscarriage, the plaintiff had to undergo a medical procedure to remove her dead baby from the womb.

53. After experiencing the harsh admonishment from Ms. Moore after suffering a negative reaction from the prior medical procedure, the plaintiff told her physician that she did not want to undergo general anesthesia while removing her dead baby.

54. The plaintiff's doctor was taken aback by this unusual request.

55. Nevertheless, the plaintiff insisted on not having general anesthesia while undergoing this procedure to remove her dead baby, because she did not want to risk having a negative reaction to the general anesthesia, which would affect her ability to perform her job duties.

56. The plaintiff requested a spinal block for the procedure to remove the baby from her womb, which allowed her to remain awake.

57. During the procedure, the plaintiff heard the sucking sound of removing her baby, and had to endure the smell of the procedure, and witnessed the placement of her dead baby in a biohazard bag.

58. The plaintiff made the choice of having only a spinal block, rather than having general anesthesia, because she did not want to run the risk of having another adverse reaction,

8

which would have negatively impacted her ability to perform her job duties, and then placed her in a position of receiving the ire of her supervisor – Dawn Moore.

## IV.
### Race Discrimination – Title VII of the Civil Rights Act of 1964 (as amended)

59.     The plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 58, supra., inclusive as though set forth herein word for word.

60.     The plaintiff was subjected to disparate treatment on account of her race while she worked as the Clinical Operations Nurse Manager for Surgery & Anesthesia Services.

61.     While the plaintiff served as the Clinical Operations Nurse Manager for Surgery & Anesthesia Services, she repeatedly requested assistance in the hiring of a Health Systems Specialist (HSS), the hiring of an Assistant Nurse Manager, and the hiring of a Medical Support Assistant (MSA); these requests were denied.

62.     The plaintiff was forced to work long hours, and was forced to work the roles of three (3) or more people, which caused her to be placed under extreme pressure and stress, which adversely affected her physical and mental health.

63.     The plaintiff was denied her request for help due to her race, and in retaliation for having opposed discriminatory treatment, in violation of Title VII of the Civil Rights Act of 1964 (as amended).

64.     The plaintiff was forced to leave her position as the Clinical Operations Nurse Manager for Surgery & Anesthesia Services due to the discriminatory treatment.

65.     The plaintiff was subjected to disparate treatment on account of her race, in that her successor for the Clinical Operations Nurse Manager for Surgery & Anesthesia Services position, who is Caucasian, was provided the needed support for her to carry out her duties without the stress and pressure that the plaintiff was forced to work in.

9

66.     The plaintiff was afforded less favorable terms and conditions of her employment based on her race, as opposed to her successor.

V.

Procedural Requirement

67.     The plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 66, supra., inclusive as though set forth herein word for word.

68.     On May 7, 2020, the agency issued its Final Agency Decision (FAD) pursuant to 29 C.F.R. § 1614.110(b), advising the plaintiff that she had ninety (90) days to file her cause of action in federal court.  (**See Copy of Final Agency Decision attached herein as Plaintiff's Exhibit "A"**).

69.     This lawsuit is being filed within ninety (90) days of the plaintiff receiving the Final Agency Decision.

VI.

Damages

70.     The plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 70, supra., inclusive as though set forth herein word for word.

71.     As a direct and proximate cause of the discriminatory and retaliatory treatment that the plaintiff has been subject to, she has suffered mental anguish and humiliation, all to her damage in an amount to be proven at the trial of this matter.

JURY DEMAND

72.     The plaintiff requests that this matter be tried before a fair and impartial jury of twelve (12) persons.

THEREFORE, the plaintiff is seeking the following relief for the above described unlawful employment practices:

a.    declare that the plaintiff has been subjected to unlawful discriminatory practices;

b.    compensatory and liquidated damages;

c.    the cost of prosecuting this action;

d.    attorney's fees;

e.    and for all other just, equitable, and legal relief.


Respectfully submitted,

PORTER LAW FIRM
The Catlett-Prien Tower Building
323 Center Street, Suite 1035
Little Rock, Arkansas 72201
Telephone: 501-244-8200
Facsimile: 501-372-5567
Email: Aporte5640@aol.com


By: _____
    Austin Porter Jr., No. 86145

Dated this 7th day of August.



**DEPARTMENT OF VETERANS AFFAIRS**
**OFFICE OF RESOLUTION MANAGEMENT**
**CONTINENTAL DISTRICT**
**2002 Holcombe Boulevard Building 110**
**Houston, TX 77030**

May 7, 2020                                                      In reply refer to: 08N

VIA: E-mail: joetta.powell@va.gov

Joetta Powell
2723 Walker Street
Little Rock, AR 72204

**SUBJECT: Notice of Dismissal for EEO Complaint No. 2003-0598-2020100770,**
**filed February 10, 2020, against officials of the Central Arkansas Veterans**
**Healthcare System in Little Rock, AR**

1.  On November 12, 2019, you initiated contact with an EEO counselor. Counseling concluded on January 31, 2020, when you were mailed the *Notice of Right to File a Discrimination Complaint*, which you received on February 7, 2020. On February 10, 2020, you filed a formal complaint of discrimination, VA Form 4939.

2.  Your complaint of discrimination raises the following claim:

> Whether the complainant was subjected to discrimination based on race (Black), when on October 18, 2019, the complainant became aware that Dawn Moore, Associate Nurse Executive, hired assistants for the present Clinical Operations Nurse Manager (CONM). [1]

3.  EEO regulation 29 C.F.R. §1614.107(a)(1) requires dismissal of complaints that fail to state a claim. Complainants may fail to state a claim for several reasons, including when they are unable to show that they have been aggrieved by the matter complained of; they fail to allege a basis of discrimination that falls within the purview of EEO laws and regulations; or the complaint concerns a matter over which the VA lacks authority or jurisdiction.

Following a fair reading and careful review of the claims submitted during counseling and on the formal complaint, it appears you have made a claim where there is no present employment harm for which there is a remedy that is personal to you. Specifically, your claim of discrimination because management has hired additional staff under the position you used to hold more than one year prior to your initial EEO contact does not render you aggrieved. Therefore, **your complaint of discrimination is hereby <u>DISMISSED</u> in its entirety** pursuant to 29 C.F.R. §1614.107(a) (1) for failing to state a claim.

---

[1] The complainant (CP) alleges that Dawn Moore, Associate Nurse Executive, continually denied CP's request for assistants when CP occupied the CONM position during the period January 2016 to August 2018. However, CP learned Ms. Moore has hired assistants for the new CONM incumbent who is a Caucasian.


**PLAINTIFF'S EXHIBIT**
*A*

Complainant Name: Joetta Powell; Case No: 2003-0598-2020100770; Date Filed: February 10, 2020

4.  This constitutes the **FINAL AGENCY DECISION** on this complaint. If you are dissatisfied with this decision, an appeal may be filed in accordance with the attached appeal rights.

5.  If you have any questions, please contact Kenneth Green, EEO Case Manager, at (713) 791-1414, ext. 23660.

Sincerely,

*Rodger L. Evans*
RODGER L. EVANS
Continental District Manager

Enclosure:     1. Appeal Rights
               2. EEOC Form 573
               3. EEOC April 6, 2020 Letter

cc:    Margie A. Scott, Director (via Margie.Scott@va.gov)
       Central AR Veterans Healthcare System
       4300 West 7th Street
       Little Rock, AR 72205-5484

       Deidra Henry, EEO Program Manager (via VHALITEEOffice@va.gov)